## Sheffy's Appeal.

1. A. as assignee of B. sold certain real estate belonging to B. under an order of court. in pursuance of the Act of Febuary 17th 1876, Pamph. L. 4. On June 7th return was made that the property had been sold to C. for $5210. The return was confirmed, and on September 13th, a deed was executed by A. to C. On the same day C. reconveyed the premises to A. The property was sold subject to certain mortgages, amounting to $4392. The understanding, at the time of sale was, that the purchaser was to pay $818 only, and to discharge the mortgages. A. paid off the mortgages, and subsequently, on November 10th 1879, procured an amendment of the return of sale, so as to correspond to the facts above stated. A. upon filing his account as assignee, then claimed subrogation as against B.'s personal property, for the amount disbursed by him in discharging the mortgages. *Held*, that no creditor of B. having been misled to his injury, the court had an undoubted right to allow the amendment of the return, even after the long time which had elapsed since its confirmation. *Held, further*, that A. was not entitled to subrogation as against B.'s personalty, for the amount disbursed by him for payment of the mortgages.

2. Where an anterior lien has been paid by the debtor, or one who stands in the debtor's shoes, a posterior lien creditor cannot be subrogated to the rights of the anterior.

March 2d 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Court of Common Pleas of *Lehigh county:* Of July Term 1880, No. 45.

The facts of this case were as follows: Lewis M. Frey made a general assignment for the benefit of creditors of real and personal estate, to W. J. Craig, on February 12th 1876. In April 1877, the court, on petition of the assignee, made an order authorizing him to sell at public sale a certain house and lot, part of the assigned estate, in accordance with the Act of February 17th 1876, Pamph. L. 4. On June 7th 1877, the assignee returned that he had sold the premises in question to R. Clay Hamersly for $5210. The return was confirmed by the court, and on September 13th 1877, the assignee conveyed the premises to Hamersly, who, by deed dated the same day, reconveyed the same to the said William J. Craig (the assignee) in his own right. No money changed hands.

At the time of assignment and sale the said real estate was encumbered by mortgages and judgments in the following order: Three mortgages aggregating $4392; William J. Craig, judgment, $1400; other judgment-creditors, aggregating $3182.75, including a judgment held by George Sheffy for $820.39. The mortgages were accompanied with bonds, which mortgage-debts the assignee paid in full. The assignee also sold other real estate of the assignor, situate in Northampton county, without an order of court, for the nominal price of $1, subject to mortgages for $1293.50, which were paid by the purchaser. The assignee in his account,

filed June 3d 1878, charged himself with the purchase-money, $5210, and claimed credit for the amount of the mortgages, $4392, and also claimed credit for $818, the balance of the purchase-money, as having been paid to him on account of his judgment of $1400.

The account was referred to an auditor, before whom the subsequent judgment-creditors objected to the said credits. The auditor declined to disallow the said credits, and in the distribution of the personal property subrogated William J. Craig to the rights of the mortgagees, and awarded him a pro rata dividend on $5685.50, the amount of all the said mortgages (including those on the Northumberland county land), and also on the amount of his judgment. The result of this distribution was that Craig would receive $818, proceeds of the real estate, and the further sum of $495.99 out of the personal fund, amounting together to $1313.99, or nearly the full amount of his judgment, while the other judgment-creditors would only receive a pro rata dividend of seven per cent. The subsequent judgment-creditors filed exceptions to this report, pending which, on September 6th 1879, Craig and Hamersly presented their petition to the court, setting forth that by inadvertence a mistake had been made in the return of the assignee to the order of sale in 1877, and in the assignee's account, in stating the purchase-money as $5210, whereas it should have been $818, which was the true amount for which the premises sold subject to the mortgages. It was admitted that the mortgages were not discharged by the sale,—the express terms of the Act of 1876 preserving their lien, and it having been announced at the sale that the property would be sold subject to the mortgages. The mistake arose by including in the bid, in addition to the actual purchase-money, the amount of the mortgages, on the understanding that the purchaser would receive credit for them. A rule to show cause was granted, and testimony taken which established the facts alleged in the petition, and, after argument, the court, on November 10th 1879, granted an order to amend the return so as to read: "That the price bid, $5210, includes the amount of mortgages undivested by said sale, amounting to $4392, and that said real estate was sold for $818." On the same day, the court dismissed the exceptions filed to the account, except the one filed to the allowance of the credits of the mortgages, as to which the report was referred back to the auditor to take further testimony and report thereon.

On December 15th 1879, the auditor filed a supplementary report awarding to William J. Craig a dividend upon the sum of $5685.50 (being the amount of all the said mortgages, including that on the Northampton county lands), amounting to $502.50; also a pro rata dividend upon his judgment of $1400, amounting

[Sheffy's Appeal.]

to $123.20; and to the remaining creditors a dividend of less than nine per cent.

George Sheffy filed, inter alia, the following exceptions to the supplementary report, viz. : 1. To the allowance to the accountant of credit for the mortgages amounting to $4392, which were not discharged by the sale, and allowing credit for the $1293 mortgage on other lands. 2. To awarding the assignee a dividend upon the amount of the mortgages by subrogation as well as upon his judgment.

These exceptions were dismissed by the court, and the report confirmed; whereupon George Sheffy took this appeal, assigning for error, inter alia, the order of November 10th 1879, permitting the amendment of the return of sale, and the dismissal of the exceptions and confirmation of the report.

*W. S. Kirkpatrick* ( *W. H. Glace* with him), for the appellant.—
1. This was the objectionable case of an assignee purchasing at his own sale in the name of an agent, who immediately reconveyed to him. In his return he reported the purchase-money as $5210, and he charged himself with that amount in his account. His allegation that he bid under the mistaken expectation that he would be credited with so much of the purchase-money as would pay off the mortgages could not properly be considered before the auditor of his account, after the lapse of more than a year from the confirmation of the deed. The rights of lien-creditors had become fixed upon the basis of the purchase-money as returned, and the assignee is chargeable with the $5210. If relievable at all, he should have applied promptly to the court to set aside the sale. For the same reasons the court erred in allowing the amendment in this proceeding two years after the return was filed without saving intervening rights.

2. The allowance to Craig of a dividend on the amount of the mortgages on the principle of subrogation, was error in any aspect. It is inconsistent with the amended finding that the actual purchase-money was only $818, and that the mortgages were undivested. There was no ground for the application of the principle of subrogation, and the amount awarded on this principle to Craig should have been distributed pro rata among all the creditors. And even if he had been entitled to be substituted as to the mortgages which were liens upon the premises sold, there is glaring error in subrogating him as to the mortgages for $1293.50 on the Northampton county lands, which were sold by the assignee for $1, and the mortgages paid by the purchaser, one Weaver.

*John Rupp* (with whom were *E. G. Schwartz, Thomas B. Metzger* and *R. Clay Hamersly*), for the appellee.—1. The appellant maintains the inequitable claim that the assignee should be

held to the consequences of a technical mistake in the return of sale, by which he would be obliged to pay to the assignor's creditors the sum of $4392, money which he never received, nor was entitled to receive, which did not belong to the assigned estate, and to which the creditors have no right.    Courts are vested both by statute and common law with large discretionary power of amendment of their own records to prevent injustice, and particularly where the party injured by a mistake is a trustee or an officer of the court:  Bailey *v.* Musgrave, 2 S. & R. 219;  Rhoads *v.* Commonwealth, 3 Harris 272;  Pennsylvania & New York Railroad & Canal Co. *v.* Bunnell & Co., 31 P. F. Smith 414;  Sheppard's Contested Election, 27 Id. 295;  DeHaas *v.* Bunn, 2 Barr 335;  Smith *v.* Hood & Co., 1 Casey 218;  Sickler *v.* Overton, 3 Barr 325;  Stephens *v.* Cowan, 6 Watts 513;  Ordroneaux *v.* Prady, 6 S. & R. 511;  Owen *v.* Simpson, 3 Watts 88;  Murray *v.* Cooper, 6 S. & R. 126;  Fitzgerald *v.* Stewart, 3 P. F. Smith 343;  2 Troubat & Haly's Practice (4th ed.), 720.

2.  As to the award to Craig of a dividend out of the personal estate on the amount of the mortgages.    Each mortgage was accompanied with a bond which represented the principal debt, to pay which the personal estate was the primary fund:  Graeff's Appeal and Meily's Appeal, 29 P. F. Smith 146;  Morris *v.* Olwine, 10 Harris 441;  Miller's Appeal, 11 Casey 481;  Wallace's Estate, 9 P. F. Smith 401.    It was Craig's right to have these bonds presented against the personal estate fund and a dividend allowed on them, so as to reduce the amount due on the mortgages, and thus increase the amount to be realized on his judgment out of the real estate.    The mortgages being paid in full out of the real estate in detriment to Craig's judgment, he was entitled to be subrogated to the rights of the mortgage-creditors on their bonds against the personal estate fund:  Wallace's Estate, 9 P. F. Smith 401;  Gring's Appeal, 8 Norris 336;  McGinnes's Appeal, 4 Harris 445.

Mr. Justice TRUNKEY delivered the opinion of the Court, March 28th 1881.

Under the Act of 1876 the court authorized sale of certain real estate.    Return was made of sale to R. Clay Hamersly for $5210, which was confirmed; and on September 13th 1877, deed was executed to said Hamersly, who, on the same day, reconveyed to the assignee.    Hamersly was attorney for the assignee, he neither paid nor received money on the purchase and reconveyance.    In fact, William J. Craig was the purchaser of the property sold by himself as trustee under the order of court.

Upon Hamersly's petition, two years after the said conveyances, the court decreed as follows:—"Now, November 10th 1879, leave is granted to amend the return to the order of sale of

the real estate, as prayed for in petition filed September 6th 1879, to wit: That the price bid, $5210, includes the amount of mortgages undivested by said sale, and interest thereon to the date of confirmation, amounting to $4392, that said real estate was sold for $818." Hamersly testified: "It was publicly stated before the time of sale and when the conditions were made known, that there were three mortgages on the Lehigh county property, which would not be divested, and that the amount thereof would be deducted from the bid. The bid was five thousand two hundred and ten dollars, which included the three mortgages. They had been paid by the accountant." It thus appears by the testimony of the purchaser's attorney, with which the amendment accords, that the purchaser expressly treated the mortgages as part of his bid. We think the court had power to allow the amendment, even after the long lapse of time. That it was just can hardly be denied, for there is no pretence that any creditor understood that the property sold for $5210 in addition to the amount of the mortgages.

The actual mistake was in the assignee making return that the property sold for the whole amount of the bid, and charging himself therewith in his account and claiming credit for the mortgage debts. By law, the sale did not divest the lien of the mortgages. In fact, all understood these liens were to remain and be deducted from the bid. Before the auditor, creditors whose liens were divested, claimed that the sum of $5210 should be distributed instead of $818, and the amendment became necessary to protect the assignee. Now he claims subrogation to the rights of the mortgagees for the purpose of reaching the personal estate fund, and this is as unconscionable as was the attempt to make him pay the amount of the mortgages to creditors, after he had paid the same to the mortgagees.

Craig was assignee, purchaser and judgment-creditor. The land was sold subject to the mortgages, and the proceeds belong to creditors whose liens were divested. In pursuance of his obligation, the purchaser paid the mortgagees; but if anything were due them they would have the right to receive a dividend out of the personal estate fund on the whole amount, if necessary, for their entire payment. Had they not been paid, and come in on that fund, to the extent of appropriations to them out of said fund other creditors would have equitable right of subrogation, so as to recover back said appropriations out of the land. But the purchaser has no equity to support subrogation. It would be in the teeth of the express understanding at the sale.

The mortgagees had the right to look to the land alone for payment, whether the debtor made assignment or not. Had Frey paid the mortgages, no judgment creditor could use them for his own benefit. The purchaser of Frey's equity of redemption, or his legal title, paid the mortgages, and the posterior judgment-

1 OUTERBRIDGE—21

creditors have no right of substitution. Counsel have failed to cite a precedent showing that where an anterior lien has been paid by the debtor, or one who stands in the debtor's shoes, a posterior lien-creditor shall be subrogated to the rights of the anterior. Because the assignee became purchaser and holds a judgment, he cannot manipulate the estate to his advantage as a creditor beyond what he would have did he appear only as a lien-creditor.

Appellant alleges that the land in Northampton county was sold without an order of court, and that the purchaser paid the mortgage thereon, $1293.50. There may be good reason for allowing Craig a dividend on the amount of that mortgage, but we discover no trace of it in the paper-books. It does not appear that his judgment was filed in that county.

The fifth assignment of error is sustained, and the distribution must be corrected accordingly.

> Decree reversed and record remitted for further proceeding. Costs of this appeal to be paid by the appellee, William J. Craig.